UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:24-cv-21185-RAR

AT LAW AND IN ADMIRALTY

CLAY CROCKETT,
     Plaintiff,
v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE,
     Defendant.

_____/

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S STATEMENT OF FACTS
AND
PLAINTIFF'S ADDITIONAL MATERIAL FACTS**

The Plaintiff, Clay Crockett by and through his undersigned counsel hereby serves his response to Defendant's Statement of Facts [DE 33] and Plaintiff's Additional Material Facts in support of Plaintiff's Response to Defendant's Motion for Summary Judgment and states as follows:

1.     Undisputed that Clay Crockett ("Plaintiff") was a fare-paying passenger who boarded the *Carnival Vista* vessel in Galveston, Texas for a vacation cruise on July 8, 2023.

2.     Undisputed that selected a lounge chair that was placed by Carnival. Plaintiff incorporates paragraphs 25 through 27 herein.

3.     Undisputed that the Plaintiff was on the lounge chair at the time of the incident.

4.     Undisputed that Plaintiff did not observe anything visually out of order related to the staircase he was sitting under prior to his incident.

5.     Undisputed that the wooden riser board (kickplate) fell on the Plaintiff's head. Plaintiff incorporates paragraph 27 herein.

6.     Undisputed that Carnival claims there are no reported incidents.

7.     Undisputed that Carnival claims there are no passenger complaints.

8.     **Disputed**. The "procedure" is that Carnival crewmembers who discover a defect must submit a work order. However, in practice that does not always happen. This is demonstrated

1

by the fact that there were numerous observable defects (see Paragraph 28 below which is incorporated herein) and there were no work orders for those defects.

9. **Disputed**. see Paragraph 20 below which is incorporated herein. Further, the lack of work order does not prove that the wood panels were not unsecured. see Paragraph 28 below which also is incorporated herein.

### PLAINTIFF'S ADDITIONAL STATEMENT OF MATERIAL FACTS

10. **THE SUBJECT STAIRCASE.**



11. The subject staircase is 48 inches wide and had 16 steps which consisted of teak wood tread and riser boards. George Melchior's Declaration attached hereto as **Exhibit A** ¶ 7.

12. **THE RISER BOARD.** Each step in the stairways was equipped with a solid teak riser board which was affixed to the adjacent wooden tread boards, top and bottom. *Id.* Specifically, the top of the riser board was affixed to the underside of the overhanging upper tread board by way of a continuous steel bracket and affixed to the tread board with a single screw at each end of the bracket. *Id.* The bottom of each tread board was affixed to the lower tread board with a continuous metal angle block; the steel angle block was adhered to a notched portion of the riser board and mechanically fastened to the underlying tread board with screws. *Id.* The board was 46 in. long, 4 ½ in. tall, and ⅜ in. thick – these dimensions equate to a volume of approximately 70.88 cubic inches (0.041 cubic feet). *Id.* ¶ 8 The density of teak wood, like most tropical hardwoods, is approximately 45 pounds per cubic foot. *Id.* Therefore, the weight of the wooden riser board is 1.85 pounds (lbs.). *Id.*

13. **CARNIVAL KNOWS THAT PEOPLE KICK THE RISER BOARD AS THEY ASCEND THE STAIRCASE.** See Carnival Corporate Representative's Deposition attached hereto as **Exhibit B**, pg. 38, ln. 7-24:



14.     **CARNIVAL  KNOWS  THAT  AN  UNSECURED  RISER  BOARD  IS  A DANGEROUS CONDITION**. See Exhibit B, pg. 46, ln. 2-14, pg. 47, ln. 3-9:



15.     Carnival  knows  that  an  unsecured  wooden  board  on  a  staircase  could  hurt somebody. Exhibit B, pg. 47, ln. 3-9.

16.     **NOTICE: INSPECTIONS**. Carnival also knows that because the kickplate of the steps  of  the  staircase  could  be  loose/unsecured,  Carnival  must  inspect  the  kickplates  of  the staircase. Exhibit B at pg. 41, ln. 16-23. Carnival inspects the steps of the staircase multiple times per day. *Id*; See Wilcor Sta Ana's (Pool and Deck Supervisor) Deposition attached hereto as **Exhibit C**, pg. 104, ln. 19-21. During these inspections, if a Carnival crewmember discovers a maintenance issue, the crewmember must report it. *Id*. at pg. 25, ln. 8 to pg. 26, ln. 3. See also Exhibit 5 (Hess Procedures Bate Stamp GR000328-330) and Exhibit 6 (Procedure to Work Order Reports) to Wilcor Sta Ana's (Pool and Deck Supervisor) Deposition (Exhibit C); See also Exhibit 7 (Job Descriptions) to Carnival Corporate Representative's Deposition (Exhibit B)

3

17.     **NOTICE: CARNIVAL CREWMEMBERS IN THE VICINITY**. Numerous Carnival crewmembers are constantly traversing the subject outdoor staircase. Exhibit C, pg. 43, ln. 22 to pg. 45, ln. 11.

18.     **NOTICE: CLEANING**. Two different departments on board the *Carnival Vista* are responsible for cleaning the subject staircase- the Housekeeping Department and the Deck Department. Exhibit C, pg. 23, ln. 4-25. *Carnival Vista*'s Housekeeping Department by and through the hotel stewards cleans and scrubs the subject staircase. *Id*. at pg. 32, ln. 5-21, pg. 107, ln. 22 to pg. 112, ln. 10. *Carnival Vista*'s Housekeeping Department's pool attendants use brushes to remove debris that build up on the steps. *Id*.  *Carnival Vista*'s Deck Department performs the "heavy duty cleaning". *Id*. at pg. 23, ln. 4-25, pg. 32, ln. 5-21.

19.     **NOTICE: ANTI-SKID STRIPS**. *Carnival Vista*'s Maintenance department replaces the anti-skid/slip grips on the treads of the subject staircase every two weeks or once per month. Exhibit C, pg. 49, ln. 25 to pg. 52, ln. 7. Any Carnival crewmember can report that the anti-skid/slips need to be replaced. *Id*.



Exhibit 6, pg. 2 to Carnival Corporate Representative's Deposition (Exhibit B).

20.     **NOTICE: REPLACING THE WOOD OF THE STAIRCASE**. Carnival is responsible for maintaining and repairing the subject staircase and has been since Carnival took possession of the *Carnival Vista*. Exhibit B, pg. 65, ln. 16-21, pg. 124, ln. 22 to pg. 125, ln. 3; See also Exhibit 7 (Job Descriptions) to Carnival Corporate Representative's Deposition (Exhibit B). Below is a work request for maintenance to the subject staircase from before the subject incident:



Exhibit 6, pg. 3 to Carnival Corporate Representative's Deposition (Exhibit B).

21.      **NOTICE: VIOLATING OF INDUSTRY STANDARDS**. Carnival failed to meet the following consensus industry codes and standards for structural stability and soundness of the portside stairway, as well as industry codes and standards for means of escape:



Exhibit A, ¶ 9.

22.      **NOTICE: VARNISHING**. The wooden boards of the staircase (the wooden boards making up the tread of the steps and the wooden board for the risers of the steps) are regularly removed so that Carnival can varnish the wooden boards. See Exhibit C, pg. 52, ln. 22 – pg. 55, ln. 19. Carnival's Pool and Deck Supervisor Wilcor Sta Ana would receive an email from

the maintenance department that the outdoor staircase would be varnished and that the staircases needed to be closed. *Id*. In order to do the varnishing, the wooden boards of the staircase (the wooden boards making up the tread of the steps and the wooden board for the risers of the steps) would be unscrewed and removed and taken to the workshop office to be varnished. *Id*.  Once varnished the wooden boards of the staircase (the wooden boards making up the tread of the steps and the wooden board for the risers of the steps) would be brought back to the staircase. *Id*.  The Carnival crewmember would have to secure the newly varnished boards to the staircase. *Id*.



Exhibit C, pg. 52, ln. 22 – pg. 55, ln. 19.

23. The varnishing occurs every 3-4 months. See Carnival crewmember Anthony Peter's (Joiner) Deposition attached hereto as **Exhibit D**, pg. 33, ln. 8-25. Notwithstanding the fact that the varnishing occurs every 3-4 months and that *Carnival Vista*'s Pool and Deck Supervisor Wilcor Sta Ana testified on March 27, 2025 during his deposition that he would receive an email from the maintenance department that the outdoor staircase would be varnished and that the staircases needed to be closed, Carnival claimed that the emails have been deleted.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**REQUEST FOR PRODUCTION AFTER DISCOVERY DEADLINE**

The emails that are exchanged between *Carnival Vista*'s Maintenance Department and/or Deck Department and/or Engine Department (including *Carnival Vista*'s Facilities Maintenance Manager, Refurbishing Team Leader, Refurbishing Team Member, Joiner, Mason, Carpenter) and *Carnival Vista*'s Housekeeping Department (including *Carnival Vista*'s Pool and Deck Supervisors) regarding the varnishing done to the wooden boards of the subject outdoor staircase (Deck 11 mid portside spiral outdoor staircase) OR the request to close/cordon off/block access to the subject outdoor staircase for the purpose of maintenance to the subject outdoor staircase including the varnishing done to the subject outdoor staircase which requires removing the wooden boards of the staircase which were generated within the three (3) years before the subject incident, excluding March 13, 2020 through July 2021 when Carnival paused its operation due to COVID-19. To the extent that the mid outdoor spiral staircases on the portside (subject staircase) and the identical staircase on the starboard side are jointly referred to in the emails, such emails would be responsive to this request.

**RESPONSE:** None, as the emails from the requested time frame (three years before the subject incident, excluding March 13, 2020 through July 2021) have been deleted and do not exist.

6

24.     **CARNIVAL CREATED THE DANGEROUS CONDITION BY FAILING TO SECURE THE WOODEN RISER BOARD TO THE STAIRCASE AFTER A VARNISHING.** Carnival created the dangerous condition by failing to secure the wooden riser board to the staircase after a varnishing. Exhibit A, ¶ 10. The screws did not go through the wood – there are no screw holes or evidence that the screws engaged the wooden riser board at all. *Id*.



Figure 2: Composite image of the stairway with the missing riser board (top), the riser board with back side shown (middle) and the riser board with front side showing (bottom). The yellow circles and lines map the correlation between the bracket screws and the area of the riser board that should have been engaged by the screw – note the absence of holes in the riser board as evidence that the board was not screwed in.

25.     **CARNIVAL ALSO CREATED THE DANGEROUS CONDITION BY PLACING LOUNGE CHAIRS UNDER THE SUBJECT STAIRCASE**. Carnival created the dangerous condition by placing lounge chairs under the subject staircase and directly next to the metal barrier. See Exhibit C, pg. 74, ln. 18 to pg. 75, ln. 3.



Exhibit 3, Bate Stamp GR000345 and Exhibit 9, Bate Stamp GR000306 to Carnival Corporate Representative's Deposition (Exhibit B).

26.     In fact, according to *Carnival Vista*'s Pool and Deck Supervisor Wilcor Sta Ana, the Carnival crewmember who set up the lounge chairs should not have put a lounge chair directly next to the metal barrier. Exhibit C, pg. 67, ln. 19 to pg. 68, ln. 16. There should have been a space between the lounge chairs and the metal barrier for guests to walk. *Id*.  Notwithstanding that, Carnival left the lounge chair directly next to the metal barrier as it was originally set up by

Carnival. Further, the purpose of the metal barrier is to protect guests from getting hit by something falling off the staircase. *Id*. at pg. 74, ln. 1-23.

27.      **10 POUNDS OF FORCE LANDED ON THE PLAINTIFF'S HEAD**. Clay Crockett was laying on the lounge chair directly next to the metal barrier on Deck 11 on board the *Carnival Vista* on July 14, 2023. Exhibit A ¶ 11. Suddenly and without warning, a riser board became dislodged and fell out of the portside stairway system. *Id*. DE 33-1, pg. 104, ln. 18-24, pg. 107, ln. 1-24. The riser board fell from a height of approximately 90 in. above the 11th deck surface, and fell approximately 5 ft. before striking Mr. Crockett in the head with approximately 10 pounds of force. Exhibit A ¶ 11. Carnival's liability expert also determined that the force of impact of the board was approximately 10 pounds of force. *Id*.

28.      **THE SUBJECT STAIRCASE AND ITS SISTER STAIRCASE HAD NUMERIOUS OBSERVABLE DEFECTS**. Exhibit A, ¶ 12:

**Two broken riser boards.**



Illustration 11: Illustration of cracked riser boards on the portside stairway – note the cracks develop in the approximate top edge of the riser blocks behind the riser boards in the images. In two instances, large portions of the riser board were missing (see thumbnail on right side of image – second step up in the image)

**Six instances in which the tread boards were loose, broken, or otherwise deformed as a result of material failure**.



Illustration 12: Illustration showing examples of defective tread step – this defect was a common condition on both the portand starboard spiral stairway. Displacement of the tread board, as seen in this image, will directly impact the stability of the underlying tread board

**29 replacement screws and 7 areas of defect to caulk and adhesion systems.**



Illustration 13: Illustration of exemplar caulk/sealant failure and deformation/uplifting of the sole tread board – sealant failure allow sidtwaoen, salt air infiltration between the teak board and the underlying steel tread plate, which promotes corrosion of the screws and accelerate failure of the tread board connections

8

**At least three other riser boards on the portside stairway system had screws that did not go through the wood. The screw on both ends of the tread bracket did not engage the wooden riser board between the bracket tabs.**



**There were additional screws (different types and sizes) added to the underside of the treads. The 7th riser board was replaced on the wrong side of the stop such that the stop was rendered ineffective.** See Illustrations 18 & 19:



29.     **NOTICE: CORRECTIVE ACTION- CLOSING THE STAIRCASE**. After the incident the subject staircase was closed with ropes at the top and bottom of the staircase. Exhibit B, pg. 72, ln. 17 to pg. 73, ln. 14.



Exhibit 3, Bate Stamp GR000341,343 to Carnival Corp Representative's Deposition (Exhibit B).

30. **NOTICE: CORRECTIVE ACTION- TIGHTENING THE SCREWS**. After the incident, a work request was generated to tighten the screws. Exhibit B, pg.160, ln. 9 to pg. 162, ln. 2.



Exhibit 6, Bate Stamp GR000351 to Carnival Corporate Representative's Deposition (Exhibit B)

31. **NOTICE: CORRECTIVE ACTION- CHANGING THE MATERIAL OF THE STAIRCASE**. After the incident, the subject staircase was changed. The teak wood was removed and replaced with synthetic wood. Exhibit B, pg. 165, ln. 12 to pg. 166, ln. 22. Because the staircase no longer has teak wood, there is no need to varnish the staircase and as such Carnival crewmembers are no longer removing the boards and installing back. *Id*. Carnival has eliminated the possibility that a crewmember fails to properly secure the wooden boards when they are installed back on the staircase after varnishing.



Exhibit 17 to Carnival Corporate Representative's Deposition (Exhibit B).

32.    **THE INDIVIDUAL WALKING UP THE STAIRCASE IS NOT TO BLAME**.

Exhibit B, pg. 55, ln. 6-23:



## CERTIFICATION OF SERVIE

I HEREBY CERTIFY that on this the 13th day of May, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served upon all counsel of record or pro se parties identified in the manner specified, wither via transmissions of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  *s/ Lisa C. Goodman*
**John H. Hickey, Esq. (FBN 305081)**
hickey@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**Lisa C. Goodman, Esq. (FBN 118698)**
lgoodman@hickeylawfirm.com
kporras@hickeylawfirm.com
**Hickey Law Firm, P.A.**
12150 S.W. 128th Court, Suite 225
Miami, FL 33186
Tel. (305) 371-8000
Fax: (305) 371-3542
*Counsel for Plaintiff*

CLAY CROCKETT v. CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE

CASE NO. 1:24-cv-21185-RAR

**SERVICE LIST**

| | |
|---|---|
| **John H. Hickey, Esq.** (FBN 305081)<br>hickey@hickeylawfirm.com<br>federalcourtfilings@hickeylawfirm.com<br>**Lisa C. Goodman, Esq.** (FBN 118698)<br>lgoodman@hickeylawfirm.com<br>kporras@hickeylawfirm.com<br>**Hickey Law Firm, P.A.**<br>12150 S.W. 128th Court, Suite 225<br>Miami, FL 33186<br>Tel. (305) 371-8000<br>Fax: (305) 371-3542<br>*Counsel for Plaintiff* | **Michael J. Drahos, Esq.** (FBN: 1019357)<br>michael.drahos@gray-robinson.com,<br>lilia.parker@gray-robinson.com<br>**Ashley N. Genoese, Esq.** (FBN: 0617059)<br>ashley.genoese@gray-robinson.com<br>**Walter Cooper Jarnagin** (FBN: 117767)<br>Cooper.Jarnagin@gray-robinson.com<br>**Gray Robinson, P.A.**<br>515 North Flagler Drive, Suite 650<br>West Palm Beach, FL 33401<br>Tel.: (561) 268-5727<br>Fax: (561) 268-5745<br>*Counsel for Defendant* |