UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:24-cv-21185-RAR

AT LAW AND IN ADMIRALTY

CLAY CROCKETT,
     Plaintiff,
v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE,
     Defendant.
_____/

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENY [DE 34]**

Plaintiff, CLAY CROCKETT, by and through his undersigned counsel hereby files his response to CARNIVAL's Motion for Summary Judgment [DE 34] and states as follows:

**I. Introduction**

Carnival's Motion for Summary Judgment should be denied. This case arises from an incident on board the *Carnival Vista* in which a heavy wooden riser board (kickplate) from one of the steps on the outdoor staircase that Carnival failed to properly secure fell directly on the Plaintiff's head on July 14, 2023 causing the Plaintiff to sustain severe and permanent injuries, including but not limited to a head laceration, a concussion, a traumatic brain injury and experiences the following constant headaches, dizziness, nausea, vomiting, brain fog, confusion, memory loss, and sensitivity to lights and sounds.

Carnival moves for summary judgment on two issues: 1) that Carnival did not have actual or constructive notice of the dangerous condition. This is inaccurate and the Plaintiff can demonstrate at least 12 different ways Carnival had notice of the dangerous condition; and 2) that Plaintiff's negligent training claim fails. It does not. The plaintiff not only properly pled a negligent

1

training claim there is ample evidence to support a finding that Carnival was negligent in its implementation or operation of its training program. As such, Carnival's Motion should be denied in its entirety and this case should proceed to trial.

## II. Memorandum of Law

Fed. R. of Civ. P.56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Allen v. Tyson Foods*, 121 F.3d 642 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986). Summary judgment is appropriate only when the evidence before the court demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence must be viewed in the light most favorable to the nonmoving party. *Skrtich v. Thornton*, 280 F.3d 1295, 1299 (11th Cir. 2002) (citing *Augusta Iron & Steel Works, Inc. v. Emps. Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988)). That is, courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and "when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version." *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (emphasis omitted); *Celotex*, 477 U.S. at 322-23.

## III. Argument

### A. Carnival had notice of the dangerous condition

Carnival argues in its Motion that the Plaintiff fails to show that Carnival had actual or constructive notice of the dangerous condition. DE 34, pg. 5-7. This is inaccurate. A cruise ship

2

operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it. Liability for a cruise ship operator thus '"hinges on whether it knew or should have known' about the dangerous condition." *Guevara v. NCL (Bahamas) Ltd.*920 F.3d 710, 720 (11th Cir. 2019) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989. Again, [t]he question is whether [Carnival] *should have known*, not whether it actually knew, about the [unsecured wooden riser board]". *Lebron v. Royal Caribbean Cruises, Ltd.*, 818 F. App'x 918, 921 (11th Cir. 2020) *citing Keefe*, 867 F.2d at 1322.

Here, there are *at least 12 different ways* Carnival knew or should have known about the dangerous condition- the unsecured wooden riser board. Thus, Carnival had a duty under the circumstances and Defendant's Motion should be denied. See *Lebron,* 818 F. App'x at 922 ("the jury was entitled to find Royal Caribbean had constructive notice of the gouge in the ice based on the following evidence  presented at trial. First, Royal Caribbean's expert and employee explained it is important to maintain and resurface the ice to prevent accident and injury. This establishes Royal Caribbean's general knowledge of the unsafe condition at issue—gouges in the ice. Next, Claudia Lebron testified that, on the day of the accident, gouges in the ice were readily visible ten to fifteen minutes prior to Mr. Lebron's fall. This establishes that the unsafe condition existed for at least ten minutes and that the condition was detectable by a lay person on or around the ice. Finally, Royal Caribbean employees testified that there were three crewmembers stationed in the immediate vicinity of the ice.").

### 1.  Notice: Carnival Testimony

Carnival knows that people kick the riser board as they ascend the staircase. See  Plaintiff's Statement of Facts ("Pltf's SOF") ¶ 13. Carnival knows that an unsecured riser board is a dangerous condition. *Id*. ¶ 14.  Carnival knows that an unsecured riser board could hurt somebody. *Id*. ¶ 15. *Doudeau v. Target Corp.,* 572 Fed.Appx. 970, 972 (11th Cir.2014) (testimony from

defendant's employee that area of slip and fall was a known danger when it rained created an issue of fact regarding defendant's notice)**.**

2. **Notice: Carnival created the dangerous condition by failing to secure the wooden riser board to the staircase after a varnishing and by placing lounge chairs under the subject staircase**

Carnival is responsible for maintaining and repairing the subject staircase. Plaintiff's SOF ¶ 20 The wooden boards of the staircase (the wooden boards making up the tread of the steps and the wooden board for the risers of the steps) are regularly removed so that Carnival can varnish the wooden boards. *Id*. at ¶ 22. Carnival's Pool and Deck Supervisor Wilcor Sta Ana would receive an email from the maintenance department that the outdoor staircase would be varnished and that the staircases needed to be closed. *Id*. In order to do the varnishing, the wooden boards of the staircase (the wooden boards making up the tread of the steps and the wooden board for the risers of the steps) would be unscrewed and removed and taken to the workshop office to be varnished. *Id*. Once varnished the wooden boards of the staircase (the wooden boards making up the tread of the steps and the wooden board for the risers of the steps) would be brought back to the staircase. *Id*. The Carnival crewmember would have to secure the newly varnished boards to the staircase. *Id.*

Carnival created the dangerous condition by failing to secure the wooden riser board to the staircase after a varnishing. *Id*. at ¶ 24 The screws did not go through the wood – there are no screw holes or evidence that the screws engaged the wooden riser board at all. *Id*. Carnival also created the dangerous condition by placing lounge chairs under the subject staircase and directly next to the metal barrier. In fact, according to *Carnival Vista*'s Pool and Deck Supervisor Wilcor Sta Ana, the Carnival crewmember who set up the lounge chairs should not have put a lounge chair directly next to the metal barrier. *Id*. at ¶ 25. There should have been a space between the lounge chairs

and the metal barrier for guests to walk. *Id.*  Notwithstanding that, Carnival left the lounge chair directly next to the metal barrier as it was originally set up by Carnival. Further, the purpose of the metal barrier is to protect guests from getting hit by something falling off the staircase. *Id.*

This is not a transitory foreign substance case. As such, the 11th Circuit opinion in *Pizzino v. NCL (Bahamas) Ltd.*, 2017 WL 4162194, at *1 (11th Cir. 2017), should be limited to its facts. In *Pizzino*, an area of water allegedly reached the floor from a bucket carried by a crew member. The crew member testified that he did not spill any liquid on the floor.  The plaintiff, *Pizzino*, testified to water on the floor after she fell.  Accordingly, Pizzino simply failed to show or present evidence that the condition existed long enough to place the cruise line on constructive notice.

Unlike *Pizzino*, where the crew member testified that water did not spill, the evidence shows that Carnival created the dangerous condition by failing to secure the wooden riser board to the staircase after a varnishing.

### 3.   Notice: The length of time the dangerous condition existed

Carnival knew or should have known about the dangerous condition because it existed for over a week, if not longer. The varnishing occurs every 3-4 months. Pltf's SOF ¶ 23. The Shift Reports for the subject cruise do not indicate that the subject staircase was closed for varnishing during the subject cruise. See Exhibit 9 to Carnival's Corporate Representative's Depositions (Exhibit B to Pltf's SOF). Therefore, at the very least the last varnishing occurred over a week before the subject incident occurred.

"A maritime plaintiff can establish constructive notice with evidence that the defective condition existed for a sufficient period of time to invite corrective measures." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019). Three hours is more than enough time for Carnival to take corrective action to eliminate the hazardous condition. *See Dudley v. NCL (Bah.)*

*Ltd.*, 2023 U.S. Dist. LEXIS 143569 (S.D. Fla. Aug. 15, 2023) (The Court held that that the allegations of notice including the length of time the dangerous condition existed were sufficient to withstand a motion to dismiss.); *Plott v. NCL Am., LLC*, 786 Fed. Appx. 199, 201 (11th Cir. 2019) (finding sufficient period of time when  crewmembers continuously monitored an area that had been wet for at least 20 to 25 minutes); *Underwood v. NCL (Bahamas) Ltd.*, 2019 WL 2011389, at *2 (S.D. Fla. Feb. 12, 2019) (sufficient period of time when puddle existed for at least 15 minutes); *Sutton v. Royal Caribbean Cruises Ltd.*, 774 F. App'x 508, 511 (11th Cir. 2019) ("she can put forward evidence that the defective condition existed for a sufficient period of time to invite corrective measures"); *Thomas v. NCL (Bahamas), Ltd.*, 203 F. Supp. 3d 1189, 1190 (S.D. Fla. 2016) (puddle that existed at least 15 minutes sufficient for a reasonable jury to find constructive notice); *Marsh v. Celebrity Cruises, Inc.*, 2017 WL 6498107, at *3  (S.D. Fla. Dec. 13, 2017) (evidence that a liquid was present on the floor for at least  30 minutes before plaintiff's fall sufficient for a reasonable jury to find a defendant cruise ship operator had constructive knowledge of its existence.).

4. **Notice: the dangerous condition is an ongoing repetitive problem**

Carnival knew or should have known about the dangerous condition because the dangerous condition is an ongoing repetitive problem. The subject staircase was observed during an inspection on December 16 2023 (approximately 5 months after the subject incident) to have numerous defects. Pltf's SOF ¶ 28. The most relevant and disturbing being that at least three other riser boards on the portside stairway system had screws that did not go through the wood and that the screw on both ends of the tread bracket did not engage the wooden riser board between the bracket tabs. *Id*. This is the same situation which allowed the riser board to fall and hit Crockett in the head. *Hager v. Royal Caribbean Cruises, Ltd.*, 2022 U.S. Dist. LEXIS 94102 (S.D. Fla. May

6

25, 2022) (the Court held that through both the description of the staircase in Dr. Lederer's expert report which identified the defects of the staircase and work orders regarding the staircase, Hager has presented evidence suggesting that Royal Caribbean knew or should have known that the subject staircase presented a dangerous condition.)

Clearly, Carnival regularly and continuously fails to secure to secure the wooden riser board to the staircase after a varnishing. The fact that even after the subject incident occurred Carnival continued to fail to properly secure the riser board on the subject staircase undisputedly demonstrates an ongoing repetitive problem. See *Nielsen v. MSC Crociere S.A.,*2011 U.S. Dist. LEXIS 158852, *18-19 (S.D. Fla. June 24, 2011) (the court denied the motion to dismiss for plaintiff's negligent supervision claim because the plaintiff had alleged that the defendant allowed ongoing, recurring, continuous or repetitive problems to remain and also alleged that a prior incident had occurred).

### 5. Notice: Crewmembers in the vicinity

Carnival knew or should have known about the dangerous condition because there were crewmembers in the vicinity of where the incident occurred. Pltf's SOF ¶ 17. See *Plott v. NCL Am., LLC*, 786 Fed. Appx. 199, 203 (11th Cir. 2019) (citing *Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 272 S.E.2d 327, 330 (Ga. 1980) ("In some cases the proprietor may be held to have constructive knowledge if the plaintiff shows that an employee of the proprietor was in the immediate area of the dangerous condition and could have easily seen the substance and removed the hazard." (quotation marks omitted)); *Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 536 (11th Cir. 2018) ("[The] facts place the crew member in the immediate vicinity of a puddle of soap that was one-and-a-half feet in diameter.  Drawing all reasonable inferences in [plaintiff's] favor, a factfinder could conclude that the crew member knew or should have known

7

about the puddle of soap at his feet and either removed the hazard or warned [plaintiff] of it."). *Haiser v. MSC Cruises (USA) Inc.,* 2019 WL 4693200, at \*5 (S.D. Fla. Aug. 9, 2019) (denying *summary judgment* in part where a "reasonable factfinder could conclude that crewmembers knew or should have known about the presence of water on floor since they were in the immediate vicinity and based on the amount of time the water was there."); *Markowitz v. Helen Homes of Kendall Corp.*, 826 So.2d 256, 261 (Fla. 2002) ("The fact that there were three employees in the vicinity of where the fall occurred is sufficient to create a jury question as to whether [Defendant] exercised reasonable care under the circumstances to maintain its premises in a safe condition.")

### 6. Notice: Crew members are regularly cleaning the subject staircase

Carnival knew or should have known about the dangerous condition through its cleaning of the staircase. Pltf's SOF ¶ 18. Two different departments on board the *Carnival Vista* are responsible for cleaning the subject staircase- the Housekeeping Department and the Deck Department. *Id*. *Carnival Vista*'s Housekeeping Department by and through the hotel stewards cleans and scrubs the subject staircase. *Id*. *Carnival Vista*'s Housekeeping Department's pool attendants use brushes to remove debris that build up on the steps and in the corners were the riser boards are located. *Id*. *Carnival Vista*'s Deck Department performs the "heavy duty cleaning". *Id*.

### 7. Notice: Carnival's Policy and procedures and trainings

Carnival had notice of the dangerous condition because of its policy and procedures and trainings. Pltf's SOF ¶ 16, 26. *See Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d 1282 (11th Cir. 2015) ("[E]vidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence."); *Plott v. NCL America, LLC*, 786 F. App'x at 201, 203 (training of crewmembers to clean and cordon off accumulations of water evidence of notice); *Carroll,* 955 F.3d at 1265-66 (evidence that Carnival's pool deck supervisor,

8

hotel stewards, and onboard security officers were trained to inspect lounge chairs set out on the deck and to make sure that those chairs were not protruding into walkways served as evidence that Carnival had notice of the potentially dangerous nature of chairs protruding into walkways).

### 8. Notice: Inspections

Carnival knows that because the kickplate of the steps of the staircase could be loose/unsecured, Carnival must inspect the kickplates of the staircase. Pltf's SOF ¶ 16. Carnival inspects the steps of the staircase multiple times per day. *Id*. As such, Carnival knew or should have known about the dangerous condition through these multiple inspections. *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265-66 (11th Cir. 2020) (evidence that Carnival's pool deck supervisor, hotel stewards, and onboard security officers were trained to inspect lounge chairs set out on the deck and to make sure that those chairs were not protruding into walkways served as evidence that Carnival had notice of the potentially dangerous nature of chairs protruding into onboard walkways).

### 9. Notice: Work Orders

Carnival knew or should have known about the dangerous condition demonstrated by the fact that there are work orders for the subject staircase. Pltf's SOF ¶ 20, 19. *See Rodgers v. Costa Crociere, S.p.A.*, 2009 U.S. Dist. LEXIS 154103, 2009 WL 10666976, at *5 (S.D. Fla. July 7, 2009) (denying summary judgment because a jury could find constructive notice based on work orders for a staircase submitted within the two years prior to plaintiff's accident), *aff'd*, 410 F. App'x 210 (11th Cir. 2010). *See also Hager v. Royal Caribbean Cruises, Ltd.*, 2022 U.S. Dist. LEXIS 94102 (S.D. Fla. May 25, 2022) (the Court held that through both the description of the staircase in Dr. Lederer's expert report and work orders regarding the staircase, Hager has

presented evidence suggesting that Royal Caribbean knew or should have known that the subject staircase presented a dangerous condition.)

**10. Notice: Carnival regularly warns passengers about the subject staircase**

Carnival knew or should have known about the dangerous condition because Carnival warns passengers about the subject staircase. Carnival regularly closed the staircase for maintenance. Pltf's SOF ¶ 22, 23, 29. The closing of the staircase is Carnival's warning to passengers not to use the staircase. *Plott v. NCL America, LLC*, 786 F. App'x at 201, 203 (training of crewmembers to clean and cordon off accumulations of water evidence of notice); *Brady v. Carnival Corp.,* No. 21-10772, 2022 U.S. App. LEXIS 12209, *9-10 (11th Cir. May 5, 2022) (holding that warning signs are enough to withstand a motion for summary judgment); *Horne v. Carnival Corp.*, 741 F. App'x 607, 608 (11th Cir. 2018) (holding that evidence that Carnival sometimes posted signs on a specific pool deck door that read "caution, strong winds" created "a genuine issue of fact" as to whether Carnival had actual or constructive notice of the hazardous condition at issue); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d at 1288-89 (concluding that a cruise ship operator had notice that the ship's pool deck could be slippery after rain from evidence that crew members sometimes posted warning signs on the pool deck after rain.); *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1094 (S.D. Fla. 2014) (holding that the "presence of warning cones" near an alleged slip and fall is evidence from which "a reasonable jury could ... infer that [the defendant] was on notice of the potentially hazardous condition.").

**11. Notice: violation of industry standards.**

Carnival had notice of the dangerous condition because staircase violates industry standards. Pltf's SOF ¶ 21. See *Carroll v. Carnival Corp.*, 955 F.3d 1260(11th Cir. 2020) (the Court held that an expert affidavit stating that a condition falls below "industry standards" is

"relevant in determining whether [defendant's] conduct fell below the standard of care.) "[T]he law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." *Cook v. Royal Caribbean Cruises, Ltd.*, 2012 WL 1792628, at *3 (S.D.Fla. May 15, 2012) (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir.1975); *Frazier v. Continental Oil Co.*, 568 F.2d 378 (5th Cir.1978)). Such guidelines are also probative of the defendants' constructive knowledge of the allegedly hazardous condition. See *Cook*, 2012 WL 1792628, at *3; *Andersen v. Royal Caribbean Cruises Ltd.,* 543 F. Supp. 3d 1346, 1357 (S.D. Fla. 2021) ("[E]vidence that an allegedly dangerous condition failed to comply with industry safety standards, together with other evidence of notice, can be used to establish constructive notice."); See *Holderbaum v. Carnival Corp.,* 87 F. Supp. 3d 1345 (S.D. Fla. February 19, 2015) (the court held that based on the IMO recommendation and the record evidence, a reasonable jury could conclude that the handrail was too large, hazardous, and that Defendant knew it was too large and hazardous) *Muncie Aviation Corp.,* 519 F.2d at 1181 (holding that to the extent the defendant's pilot failed to consult advisory materials issued by the Federal Aviation Administration, or failed to follow their recommendations, "the jury could permissibly infer that he failed to meet the appropriate standard of due care"); *Frazier*, 568 F.2d at 381–82 (holding that the district court erroneously excluded testimony concerning violations of industry standards to establish the defendant's negligence); *Donlon v. Gluck Grp., LLC, 2011 WL 6020574, at *6 (D.N.J. Dec. 2, 2011)* (denying summary judgment motion filed by houseboat manufacturer in lawsuit filed by person who fell down the stairs of a houseboat, holding that non-binding standards promulgated by the ASTM were admissible because a jury could use the evidence to conclude that

11

the stairs "were defectively designed" and because the standards put defendant "on constructive notice of the potential danger of the stairs")

### 12. Notice: Corrective Action- (1) closing the staircase; (2) tightening the screws; (3) changing the material of the staircase

Carnival knew or should have known about the dangerous condition through the fact that Carnival has taken numerous corrective actions. Following the incident the subject staircase was closed with ropes at the top and bottom of the staircase Pltf's SOF ¶ 29. Also after the incident a work request was generated to tighten the screws. *Id*. at ¶ 30. The subject staircase was changed was completely changed after the subject incident, but not changed as a result of the subject incident. *Id*. at ¶ 31.  The teak wood was removed and replaced with synthetic wood. *Id*. Because the staircase no longer has teak wood, there is no need to varnish the staircase and as such Carnival crewmembers are no longer removing the boards and installing back. *Id*.  Carnival has eliminated the possibility that a crewmember fails to properly secure the wooden boards when they are installed back on the staircase after varnishing. *Id*.

Evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition. *Carroll v. Carnival Corporation*, 955 F. 3d 1265 (11th Cir. 2020); *see also Bunch v. Carnival Corp.*, 825 F. App'x 713, 718 (11th Cir. 2020); see also *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308-09 (11th Cir. 2020) (noting that evidence of corrective action on both the cruise ship where the passenger was injured and on other ships "could have carried considerable weight for the jury" about whether the carrier had notice of the dangerous condition). In_ *Carroll*, the plaintiff tripped over a lounge chair while crossing a cruise deck. *See Carroll*, 955 F.3d at 1263. Testimony showed the cruise line had taken certain steps to reposition lounge chairs — on the same deck where the plaintiff tripped — to maintain a clear walkway. *See id*. at 1266. The court concluded that "a reasonable jury could view th[e] testimony as evidence that [the

defendant] ha[d] taken corrective measures — *i.e.*, adopt[ed] a policy of keeping the chairs in-line and/or in the upright position and instruct[ed] employees to ensure that they are not blocking the walkway — due to a known danger[.]" *Id.* (alterations added). Similarly, in *Anders*, the plaintiff alleged that a crew member who was stationed at the top of a slide to prevent the type of accident suffered by the plaintiff was sufficient evidence of corrective measures to establish actual notice of the dangerous condition. *Anders*, 2023 U.S. Dist. LEXIS 112642, 2023 WL 4252426, at *6. See also *Cole v. Carnival Corp.*, 2024 U.S. Dist. LEXIS 89052 (S.D. Fla. May 17, 2024), (the Court held that the testimony does establish that Carnival has taken corrective measures to prevent the type of injury suffered by Plaintiff to establish notice.)

**13. Notice can be demonstrated without prior incidents**

Carnival's critiques about the lack of prior incidents is unpersuasive where as here there are numerous ways the Cruise Line knew or should have known about the dangerous condition. *See Selfridge v. Carnival Corp.*, 2022 U.S. Dist. LEXIS 46960 (S.D. Fla. Mar. 16, 2022) (work orders and violation of industry standards demonstrate constructive notice and the Court denied Carnival's Motion for Summary Judgment.); *See also Hager v. Royal Caribbean Cruises, Ltd.*, 2022 U.S. Dist. LEXIS 94102 (S.D. Fla. May 25, 2022) (the Court held that through both the description of the staircase in Dr. Lederer's expert report and work orders Hager presented evidence suggesting that Royal Caribbean knew or should have known that the subject staircase presented a dangerous condition. The Court did not consider any of the prior incidents as there was a pending motion in Limine to exclude the prior incidents. The Court held that Hager presents sufficient evidence of notice independent of the prior incidents.); See also *In re Petition for Exoneration from or Limitation of Liab.*, No. 24-20723-CIV, 2024 U.S. Dist. LEXIS 116409, *12-13 (S.D. Fla. July 2, 2024) ( the Court held that "[b]ecause Claimant alleges notice even without

the prior incidents from Claimant's Statement of Claims, it does not address Petitioner's critiques of the prior incidents Claimant identifies as establishing notice.")

**14. The cases relied on by Carnival are distinguishable and thus not applicable**

Carnival relies on *Sutton v. Royal Caribbean Cruises, Ltd.*, 774 F. App'x 508 (11th Cir. 2019) to support its position. DE 34, pg. 6. *Sutton* is distinguishable and thus not applicable. Sutton was on the lower floor of the ship's Labyrinth Night Club when she felt a mirror from an MX-10 machine suspended above the dance floor hit her in the head. The MX-10 machines are lighting instruments with a rotating oval mirror used to reflect light for a disco ball-like effect. Royal Caribbean crewmembers would clean the MX-10 machines. There was no evidence that Royal Caribbean ever did anything to the bolts, brackets, or shafts securing the mirror on the MX-10 machines. That is not the case here. Unlike in Sutton, here, Carnival is regularly unscrewing the wooden boards of the staircase, varnishing the wooden boards and then re-installing those boards on the staircase. Pltf's SOF ¶ 22. The varnishing occurs every 3-4 months. *Id*. at ¶ 23. Further, unlike *Sutton*, here, there are numerous ways Carnival knew or should have known about the dangerous condition. See the arguments above regarding notice which are incorporated herein.

Carnival also relies on *Tesoriero v. Carnival Corp.*, 965 F.3d 1170 (11th Cir. 2020) to support its position. DE 34, pg. 5-6. *Tesoriero* is also distinguishable and thus not applicable. In *Tesoriero* it was found that any defect relating to dried or chipped glue on the chair that fell apart when the plaintiff sat on it could not have been visible until the chair came apart. That is not the case here. Here, the defect (failing to secure the wooden riser board to the staircase) is observable through a regular visual inspection. In fact, Plaintiff's liability expert through just a visual inspection (without removing boards) observed that the same dangerous condition which allowed the riser board to fall and hit Crockett in the head, existed on December 16 2023 (approximately

14

5 months after the subject incident). Pltf's SOF ¶ 28. During that inspection, the visual inspection revealed that at least three other riser boards on the portside stairway system had screws that did not go through the wood and that the screw on both ends of the tread bracket did not engage the wooden riser board between the bracket tabs. *Id*. See *Lebron v. Royal Caribbean Cruises, Ltd.*, 818 F. App'x 918 (11th Cir. 2020) ("The fact that Claudia Lebron noticed the gouges also forecloses Royal Caribbean's second argument—that the gouges were not capable of detection.") Further, unlike *Tesoriero*, here, there are numerous ways Carnival knew or should have known about the dangerous condition. See the arguments above regarding notice which are also incorporated herein.

### B. Carnival is not entitled to Summary Judgment on the Negligent Training Claim

#### 1. Plaintiff sufficiently pled Negligent Training (Count III)

Even though this is not a motion to dismiss and Carnival never filed a motion to dismiss, Carnival now argues that the Plaintiff improperly pled his Negligent Training claim. DE 34, pg. 7. This is inaccurate. "Negligent training occurs when an employer was negligent in the implementation or operation of [a] training program and this negligence caused a plaintiff's injury." *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275, 1304 (S.D. Fla. 2021) (Moore, J.) (cleaned up). For a plaintiff "to state a claim for negligent training, [s]he must show that [the defendant] was negligent in the implementation or operation of [a] training program." *Mercado v. City of Orlando,* 407 F.3d 1152, 1162 (11th Cir. 2005).

The following allegations are sufficient to state a claim for negligent training:

> 23. **NOTICE: TRAINING AND PROCEDURES AND TRAININGS.** Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the fact that the cruise line has policies and procedures applicable to the subject area. CARNIVAL has policies regarding inspection, cleaning and/or maintenance applicable to the subject area. CARNIVAL specifically

15

trains its crew members to inspect and maintain the subject area in a safe condition. CARNIVAL requires and trains crew members to warn passengers of any hazards and/or dangerous conditions including the subject dangerous condition. CARNIVAL specifically trains crew members to place written warning signs, markers and/or other indicators to warn passengers of hazardous and/or dangerous conditions including the subject dangerous condition. CARNIVAL knew or should have known that without verbal, written and/or visual warnings passengers may not be able to appreciate the irregularities of the wooden panel on the exterior staircase. CARNIVAL knew or should have known through the use of reasonable care that the irregularities of the wooden panel on the exterior staircase is not open and obvious to its passengers.

...

43. CARNIVAL should have become aware that it had failed to properly train its crew members given that the crew member(s) failed to maintain, inspect, and repair the staircases on board the *Carnival Vista*, including the subject exterior staircase between Deck 11 and 12 from which a wooden panel fell on CROCKETT's head on July 14, 2023.

45.**CARNIVAL BREACHED ITS DUTIES.** CARNIVAL breached its duty of care owed to CROCKETT and was negligent by failing to reasonably train its crewmembers to maintain, inspect, repair, and warn passengers of the dangerous conditions on board the *Carnival Vista* including the subject exterior staircase between Deck 11 and 12 from which a wooden panel fell on CROCKETT's head on July 14, 2023. Carnival failed to comply with industry standards regarding how to train its crew members to maintain, inspect and repair its staircases and warn passengers of the dangerous conditions. Carnival failed to ensure the implementation or operation of its training programs described in paragraph 23 and incorporated herein.

46.At the time that the heavy wooden panel described above fell off one of the steps of the subject staircase, the crew member that was responsible for warning, inspecting, maintaining and repairing that area failed to do so. Because that crew member was not properly trained, that crew member failed to properly and adequately warn passengers, like CROCKETT, of the dangerous conditions on board the *Carnival Vista* including the subject exterior staircase between Deck 11 and 12 from which a wooden panel fell on CROCKETT's head on July 14, 2023. Because that crew member was not properly trained, that crew member also failed to properly inspect, maintain, and repair the subject staircase including the wooden panels and the screws and/or fasteners

16

DE 1 ¶ 23, 43, 45, 46. These allegations are sufficient to state a claim for negligent training. See Rector v. Carnival Corp, Case No.: 1:24-cv-22403-RAR, DE 33 (this Court denied Carnival's Motion to dismiss the plaintiff's negligent training claim with similar allegations made in the complaint *Spotts v. Carnival Corp.*, 2024 U.S. Dist. LEXIS 5126 (S.D. Fla. Jan. 10, 2024) (the Court denied Carnival's Motion to dismiss the plaintiff's negligent training claim with similar allegations made in the complaint); *Schaff v. Carnival Corp.*, 2024 U.S. Dist. LEXIS 59532 (S.D. Fla. Apr. 1, 2024) adopted by 2024 U.S. Dist. LEXIS 75461 (S.D. Fla. Apr. 25, 2024)( (the Court denied Carnival's Motion to dismiss the plaintiff's negligent training claim with similar allegations made in the complaint); Other courts have done the same when similar allegations were pled in the complaint. See *In re Petition for Exoneration from or Limitation of Liab.*, 2024 U.S. Dist. LEXIS 116409, *12-13 (S.D. Fla. July 2, 2024) (the Court denied the Cruise Line's Motion to Dismiss the negligent training claim); *Casey v. Carnival Corp.*, 2023 U.S. Dist. LEXIS 99969 (S.D. Fla. June 8, 2023) (the Court denied Carnival's Motion to Dismiss Plaintiff's negligent training claim); *Heard v. Carnival Corporation*, Case No. 1:19-cv-22380-DPG, DE 19 (November 25, 2019) (the Court denied Carnival's Motion to Dismiss including Carnival's motion to dismiss Plaintiffs negligent training and negligent supervision claims); *Baker v. NCL Am.*, LLC, 2020 U.S. Dist. LEXIS 79323 (S.D. Fla. May 6, 2020) ( the Court denied NCL's Motion to Dismiss in its entirety including NCL's motion to dismiss Plaintiffs negligent training and negligent supervision claims); See also *Harrison v. Red Bull Distrib. Co., Inc.*, 2019 WL 1117022, at *2–3 (M.D. Fla. Mar. 11, 2019) (the court found that similar allegations were sufficient to plead a claim for negligent training).

## 2. Carnival was negligent in its implementation or operation of its training program that caused his injury

Carnival is responsible for maintaining and repairing the subject staircase and has been since Carnival took possession of the *Carnival Vista*. Carnival's Corporate Representative Deposition (Exhibit B to Pltf's SOF) pg. 65, ln. 16-21, pg. 124, ln. 22 to pg. 125, ln. 3. Carnival is also responsible for inspecting the kickplates of the staircase. *Id*. at pg. 41, ln. 16-23. Notwithstanding that, Carnival was negligent in its implementation or operation of its training program which is demonstrated as follows: (1) Carnival's failure to train its crewmembers to maintain the staircase by properly reinstalling the wooden boards of the staircase after a varnishing is demonstrated by the fact that Carnival crewmember(s) failed to secure the wooden riser board that ultimately hit Crockett in the head. (Pltf's SOF ¶ 22, 24). Had Carnival properly trained its crewmembers to maintain the staircase by properly reinstalling the wooden boards of the staircase after a varnishing the dangerous condition would not have existed ; (2) Carnival's failure to train its crewmembers to maintain the staircase by properly reinstalling the wooden boards of the staircase after a varnishing is also demonstrated by the fact that after the subject incident there were at least three other riser boards on the portside stairway system had screws that did not go through the wood (Pltf's SOF ¶ 28); (3) Carnival's failure to repair the staircase is demonstrated by the numerous defects on the staircase. (Pltf's SOF ¶ 20, 22,28) Had Carnival properly trained its crewmembers to repair the staircase the numerous defects would not have existed; (4) Carnival's failure to train its crewmembers to properly inspect the area allowed for the dangerous condition to exist at the time of the incident and for at least 5 months after the incident. (Pltf's SOF ¶ 16, 24, 28) Had Carnival trained its crewmembers to properly inspect the subject area they would have discovered the fact that there were unsecured riser boards which were visually observed during Plaintiff's liability expert's inspection almost 5 months after the subject incident occurred

(Pltf's SOF ¶ 16, 28); (5) Carnival's failure to train its crewmembers to warn passengers about dangerous condition meant that no crewmember warned Crockett about the dangerous condition and/or closed the staircase as required by Carnival's Hess Procedures Bate Stamp GR000330(Exhibit 5 to Wilcor Sta Ana's (Pool and Deck Supervisor) Deposition (Exhibit C to Pltf's SOF) (Pltf's SOF ¶ 27, 29); (6) Carnival's failure to train its crewmembers regarding the proper placement of the lounge chairs meant that a Carnival crewmembers placed the lounge chair that Crockett was laying on at the time of the incident directly next to the metal barrier which another Carnival crewmember testified was against Carnival's policy. Had Carnival properly trained its crewmembers the Carnival crewmember would not have placed the subject lounge chair where it was  at the time of the incident and/or other crewmembers who saw the lounge chair directly next to the metal barrier would have moved it. (Pltf's SOF ¶ 25; 26).

### 3.   The case relied on by Carnival is distinguishable and thus not applicable

Carnival relies on *Diaz v. Carnival Corp.,* 555 F. Supp. 3d 1302 (S.D. Fla. 2021) to support its position. DE 34, pg. 8. *Diaz* is also distinguishable and thus not applicable. *Diaz* involved an incident where a Carnival crewmember was moving a motorized scooter and hurt Diaz in the process. Carnival had no policies for motorized scooters. Typically, guests bring their own motorized scooters on board ships. This is vastly different than an outdoor staircase on board the *Carnival Vista* that Carnival undisputedly controls, maintains, repairs and inspects.  Unlike *Diaz*, here there are policies and procedures applicable to the subject staircase. As such, *Diaz* is distinguishable and not applicable.

### C.  Any issue of fact the case must proceed to trial

If there are any factual issues, summary judgment must be denied and the case proceeds to trial. *See Whelan v. Royal Caribbean Cruises Ltd.,* 2013 WL 5583970, at *2 (S.D. Fla. Aug.

19

14, 2013)  (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)). Even when the parties "agree on the basic facts, but disagree about the inferences that should be drawn from these facts[,]" summary judgment "may be inappropriate." *Id.* (alteration added; citation omitted). "If reasonable minds might differ on the inferences arising from undisputed facts, then ... [c]ourt[s] should deny summary judgment." *Id.*; *Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990); *Guevara v. NCL (Bahamas), Ltd.*, 920 F.3d 710 (11th Cir. 2019). Additionally, courts cannot weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Further, personal injury negligence cases should rarely be disposed of by summary judgment. *Harvey v. Great Atlantic and Pacific Tea Company*, 388 F. 2d 123 (5th Cir. 1968).

WHEREFORE, Plaintiff, CLAY CROCKETT, respectfully requests that the Court deny Carnival's Motion for Summary Judgment in its entirety.

Respectfully submitted on this 13th day of May, 2025,

> *s/ Lisa C. Goodman*
> Lisa C. Goodman (FBN 118698)
> lgoodman@hickeylawfirm.com
> John J. Hickey (FBN 305081)
> hickey@hickeylawfirm.com
> **Hickey Law Firm, P.A.**
> *Counsel for the Plaintiff*

## REQUEST FOR HEARING PURSUANT TO LOCAL RULE 7.1(b)(2)

The Plaintiff requests oral argument should the Court have any questions or additional concerns regarding the relief requested herein. This will afford the Court a meaningful and a complete account of the matters for which this Court must decide. The Plaintiff requests a 15 -min hearing.

By:  *s/ Lisa C. Goodman*
**John H. Hickey, Esq. (FBN 305081)**
hickey@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**Lisa C. Goodman, Esq. (FBN 118698)**
lgoodman@hickeylawfirm.com
kporras@hickeylawfirm.com
**Hickey Law Firm, P.A.**
12150 S.W. 128th Court, Suite 225
Miami, FL 33186
Tel. (305) 371-8000
Fax: (305) 371-3542
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 13th day of May, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served upon all counsel of record or pro se parties identified in the manner specified, wither via transmissions of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  *s/ Lisa C. Goodman*
**John H. Hickey, Esq. (FBN 305081)**
hickey@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**Lisa C. Goodman, Esq. (FBN 118698)**
lgoodman@hickeylawfirm.com
kporras@hickeylawfirm.com
**Hickey Law Firm, P.A.**
*Counsel for Plaintiff*

CLAY CROCKETT v. CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE

CASE NO. 1:24-cv-21185-RAR

**SERVICE LIST**

| | |
|---|---|
| **John H. Hickey, Esq.** (FBN 305081)<br>hickey@hickeylawfirm.com<br>federalcourtfilings@hickeylawfirm.com<br>**Lisa C. Goodman, Esq.** (FBN 118698)<br>lgoodman@hickeylawfirm.com<br>kporras@hickeylawfirm.com<br>**Hickey Law Firm, P.A.**<br>12150 S.W. 128th Court, Suite 225<br>Miami, FL 33186<br>Tel. (305) 371-8000<br>Fax: (305) 371-3542<br>*Counsel for Plaintiff* | **Michael J. Drahos, Esq.** (FBN: 1019357)<br>michael.drahos@gray-robinson.com,<br>lilia.parker@gray-robinson.com<br>**Ashley N. Genoese, Esq.** (FBN: 0617059)<br>ashley.genoese@gray-robinson.com<br>**Walter Cooper Jarnagin** (FBN: 117767)<br>Cooper.Jarnagin@gray-robinson.com<br>**Gray Robinson, P.A.**<br>515 North Flagler Drive, Suite 650<br>West Palm Beach, FL 33401<br>Tel.: (561) 268-5727<br>Fax: (561) 268-5745<br>*Counsel for Defendant* |