UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:24-cv-21185-RAR

AT LAW AND IN ADMIRALTY

CLAY CROCKETT,

     Plaintiff,

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE,

     Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE AND/OR PRECLUDE PLAINTIFF'S UNTIMELY AND IMPROPERLY DISCLOSED WITNESSES FROM TRIAL [DE 35]**

The Plaintiff, Clay Crockett by and through his undersigned counsel hereby files his response to Defendant's Motion to strike and/or preclude Plaintiff's untimely and improperly disclosed witnesses from trial [DE 35] and states as follows:

1.    **INTRODUCTION AND BACKGROUND.** The Defendant's Motion should be denied in its entirety. Defendant's Motion seeks to strike and/or preclude the following:

**Hybrid Experts**

    a.  Fifty-five (55) disclosed "hybrid expert witnesses" in "Hybrid Disclosure A", served March 4, 2025 (DE 35-2)

    b.  Plaintiff's "Hybrid Disclosure B", served March 19, 2025 (DE 35-3)

    c.  Plaintiff's "Hybrid Disclosure C", served March 27, 2025 (DE 35-9)

**Rule 26 Initial Disclosures**

    d.  Plaintiff's "Updated Rule 26 Disclosure A", served March 19, 2025 (DE 35-4)

1

e. Plaintiff's "Updated Rule 26 Disclosure B", served March 26, 2025 (DE 35-8)

f. Plaintiff's "Updated Disclosure C", served April 1, 2025 (DE 35-10)

2. The relief sought by the Defendant is severe and unjustified. The Plaintiff has timely disclosed all witnesses and has complied with Federal Rule of Civil Procedure 26. As such, the Defendant's Motion must be denied.

3. This case arises from an incident on board the *Carnival Vista* in which a heavy wooden riser board (kickplate) from one of the steps on the outdoor staircase that Carnival failed to properly secure and fell directly on the Plaintiff's head on July 14, 2023 causing the Plaintiff to sustain severe and permanent injuries, including but not limited to a head laceration, a concussion, a traumatic brain injury and experiences the following constant headaches, dizziness, nausea, vomiting, brain fog, confusion, memory loss, and sensitivity to lights and sounds.

4. **HYBRID EXPERT DISCLOSURES.** The Defendant seeks to strike and/or preclude the following as it relates to Plaintiff's Hybrid Expert Disclosures (DE 35):

a. Fifty-five (55) disclosed "hybrid expert witnesses" in "Hybrid Disclosure A", served March 4, 2025 (DE 35-2).

b. Plaintiff's "Hybrid Disclosure B", served March 19, 2025 (DE 35-3).

c. Plaintiff's "Hybrid Disclosure C", served March 27, 2025 (DE 35-9).

5. The Plaintiff timely served his Hybrid Expert Disclosures on March 4, 2025. DE 35-2. This case involves a heavy wooden riser board (kickplate) from one of the steps on the outdoor staircase that Carnival failed to properly secure falling directly on the Plaintiff's head causing the Plaintiff to sustain a traumatic brain injury. Being thorough the Plaintiff included all of the medical providers and facilities that have treated the Plaintiff after the subject incident as "Hybrid Experts". Undisputedly, these medical providers who provided care and treatment to the Plaintiff are also fact witnesses.

6.     After a 7.1 conference, the Plaintiff amended and served his Hybrid Expert Disclosures on March 19, 2025. DE 35-3. Following another 7.1 conference, the Plaintiff amended and served his Hybrid Expert Disclosures on March 27, 2025. DE 35-9. The March 27, 2025 version is the most current version. In fact, the Defendant agrees that any alleged deficiencies have been cured by the current version of the Hybrid Expert Disclosures[1].

7.     Notwithstanding the fact that the Defendant concedes that there are no deficiencies with the current version of the Hybrid Expert Disclosures (DE 35-9), the Defendant continues to seek to strike and/or preclude Hybrid Experts specifically Dr. Jose Pizarro and Dr. Jason Siegel. Such severe relief is unwarranted here given the fact that the Defendant has had reports from Dr. Jose Pizarro and Dr. Jason Siegel since **January 31, 2025** (31 days before the expert disclosure deadline of March 4, 2025 DE 14).

8.     **LEGAL STANDARD FOR HYBRID EXPERT DISCLOSURE**. Federal Rule of Civil Procedure 26 (a)(2) requires a party to:

> [D]isclose 'the identity of any [expert] witness it may use at trial' and other information that varies depending on the expert." *1289 *Izquierdo v. Certain Underwriters at Lloyd's London Subscribing to Pol'y No. BB014330K-3830*, 2021 WL 3197008, at *3 (11th Cir. July 29, 2021) (quoting Fed. R. Civ. P. 26(a)(2)(A)). A detailed written report is required "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). **Experts who don't fit into this definition are subject to less burdensome disclosure requirements: as relevant here, they're "not required to provide a written report"; instead, they must submit only a written summary setting out "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).**

---

[1] "It was not until March 27, 2025 wherein Plaintiff served "Hybrid Disclosure C" ***properly identifying*** the two (2) "actual" witnesses Plaintiff intended to use at trial." DE 35 pg. 8 (emphasis added)

3

*Torres v. Wal-Mart Stores East, L.P.*, 555 F.Supp.3d 1276 (S.D. Fla. 2021) (emphasis added).

9.        **DR. JOSE PIZARRO & STAND-UP MRI.** The Plaintiff disclosed Dr. Jose Pizarro from Stand-up MRI as one of his Hybrid Experts. The Plaintiff testified during his deposition on November 21, 2024 that he was being sent to Stand-Up for a DTI MRI. See Plaintiff's Deposition attached hereto as **Exhibit A**, pg. 168, ln. 17-22. The Plaintiff produced records to the Defendant from this facility on **January 31, 2025** in Plaintiff's Response to Defendant's Request for Production. See Plaintiff's Response to Carnival's Supplemental Request for Production served on January 31, 2025 attached hereto as **Exhibit B**. A CD with the images from the DTI MRI were also mailed to the Defendant on February 5, 2025. The Stand-Up MRI records are 36 pages. Dr. Jose Pizarro is the neuroradiologist who reviewed and generated the report regarding the images from the DTI MRI. See Dr. Jose Pizarro's Report attached hereto as **Exhibit C**.  Dr. Jose Pizarro is the *one and only doctor* who reviewed and generated the report regarding the findings from the imaging taken during the DTI MRI.  The Defendant has had Dr. Pizarro's medical records since January 31, 2025. The Plaintiff timely identified Dr. Pizarro in Plaintiff's Hybrid Expert Disclosures on March 4, 2025. DE 35-2, pg. 38-39. Since then, the Plaintiff served amended Hybrid Disclosures (DE 35-9) "properly identifying" (DE 35, pg. 8) Dr. Pizarro who will be testifying about the following:

> Dr. Jose Pizarro is a neuroradiologist. Dr. Pizzaro will testify as to the testing performed on Clay Crockett and the findings from those tests which are contained in the medical records from **Stand-Up MRI** of Miami which were previously produced to the Defendant. Dr. Pizzaro interpreted the MRI of the Brain with DTI-3D tract dated November 18, 2024. Dr. Pizarro will testify about the findings from the DTI MRI and the NeuroQuant Analysis. Dr. Pizarro will testify about how the DTI MRI and the NeuroQuant Analysis are used to diagnose traumatic brain injuries and the significance of these tests. Dr. Pizarro will testify about the abnormal findings he observed in the DTI MRI and the NeuroQuant Analysis. Dr. Pizarro will testify that the abnormal findings he observed in the DTI MRI and the NeuroQuant Analysis are consistent with a traumatic brain

4

injury. Dr. Pizarro will testify that Clay Crockett sustained a traumatic brain injury as a result of the subject incident on July 14, 2023. Dr. Pizarro will testify that the abnormal findings he observed in the DTI MRI and the NeuroQuant Analysis are consistent with an acute injury. Dr. Pizarro will testify that the abnormal findings he observed in the DTI MRI and the NeuroQuant Analysis are not due to a history of depression and/or alcohol use. Dr. Pizarro testimony will also summarize the medical records from Stand-Up MRI. Dr. Pizarro will also testify that the testing conducted on Clay Crockett was reasonable and medically necessary**.**

DE 35-9, pg. 2-3.

10.     The Defendant has had more than ample time to conduct discovery and take the deposition of Dr. Pizarro. This is largely demonstrated by the fact that the Defendant retained a neuroradiologist Dr. Harold Keyserling to offer opinions *in opposition to Dr. Jose Pizarro*. According to Dr. Keyserling's report, Dr. Keyserling reviewed the "Brain MRI with DTI and NeuroQuant analysis and accompanying report 11/18/2024 from **Stand-Up MRI Miami**" and "Records from **Ethos Health Specialists** 11/20/2024—11/22/2024". Accordingly, the Defendant will not be prejudiced by Dr. Pizarro testifying as a Hybrid Expert in this case. Conversely, the Plaintiff will be greatly prejudiced if Dr. Pizarro is precluded from testifying as a Hybrid Expert. Further, Dr. Pizarro is undisputedly a fact witness in the case.

11.     **<u>DR. JASON SIEGEL & ETHOS HEALTH SPECIALIST</u>.** The Plaintiff disclosed Dr. Jason Siegel from Ethos Health Specialist as one of his Hybrid Experts. The Plaintiff testified during his deposition on November 21, 2024 that he was being sent to Ethos Health Specialist. See Exhibit A, pg. 157, ln. 2-12. The Plaintiff produced records to the Defendant from this facility on **January 31, 2025** in Plaintiff's Response to Defendant's Request for Production. The Ethos Health Specialist records are 48 pages. Dr. Jason Siegel is a neurologist, brain injury medicine and neurocritical care specialist who generated reports for the following testing performed on the plaintiff: the WAVi electroencephalogram (EEG), the balance & fall risk (COP), the videonystagmogram/video oculography, the olfactory (UPSIT) testing and the heart rate

5

variability testing.  See Dr. Jason Siegel's Reports attached hereto as **Exhibit D**.  Dr. Jason Siegel is one of two doctors [2]who generated reports in the Ethos Health Specialist records. The Defendant has had Dr. Siegel's medical records since January 31, 2025. The Plaintiff timely identified Dr. Siegel in Plaintiff's Hybrid Expert Disclosures on March 4, 2025. DE 35-2, pg. 39-40. Since then, the Plaintiff served amended Hybrid Disclosures (DE 35-9) "properly identifying" (DE 35, pg. 8) Dr. Siegel who will be testifying about the following:

> Dr. Jason Siegel is a neurologist, brain injury medicine and neurocritical care specialist. Dr. Siegel will testify as to the testing performed on Clay Crockett and the findings from those tests which are contained in the medical records from **Ethos Health Specialists** which were previously produced to the Defendant. Dr. Siegel interpreted the WAVi electroencephalogram (EEG), the balance & fall risk (COP), the videonystagmogram/video oculography, the olfactory (UPSIT) testing and the heart rate variability testing all dated November 20, 2024. Dr. Siegel will testify about how the WAVi electroencephalogram (EEG), the balance & fall risk (COP), the videonystagmogram/video oculography, the olfactory (UPSIT) testing and the heart rate variability testing are used to diagnose traumatic brain injuries and the significance of these tests. Dr. Siegel will testify about his findings from the WAVi electroencephalogram (EEG), the balance & fall risk (COP), the videonystagmogram/video oculography, the olfactory (UPSIT) testing and the heart rate variability testing performed on Clay Crockett. Dr. Siegel will testify that the findings from the tests are consistent with a traumatic brain injury. Dr. Siegel will testify that Clay Crockett sustained a traumatic brain injury as a result of the subject incident on July 14, 2023. Dr. Siegel will testify about the reports he generated from those tests. Dr. Siegel testimony will also summarize the medical records from Ethos Health Specialists. Dr. Siegel will also testify that the testing conducted on Clay Crockett was reasonable and medically necessary. Dr. Jason Siegel will also testify about the future medical care and treatment for Clay Crockett.

DE 35-9, pg. 3-4.

---

[2] The other doctor in the Ethos records is Plaintiff's Expert board certified neurologist Dr. Kamaldeen Saldin. Dr. Saldin relied on the results from Dr. Siegel's reports. See Dr. Saldin's Expert report attached hereto as **Exhibit E**.

6

12. **THE MINOR DEFICIENCIES WITH THE PLAINTIFF'S HYBRID EXPERT DISCLOSURES SERVED ON MARCH 4, 2024 ARE HARMLESS**. Similar deficiencies were held to be harmless in *Torres v. Wal-Mart Stores East, L.P*. The Court held as follows:

> Although Torres's Rule 26(a)(2)(C) summary was—in some respects—incomplete, we find its deficiencies entirely harmless. For a non-retained expert to offer expert testimony, the offering party must disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). While the summary Rule 26(a)(2)(C) requires "is considerably less extensive than the report required by Rule 26(a)(2)(B)," Fed. R. Civ. P. 26 advisory committee's notes to 2010 amendment, a party must do more than "identify[ ] generic subject areas of anticipated testimony, without identifying the actual substance or content of the opinions on which testimony is expected," Almonte v. United States, 2021 WL 3418402, at *3 (S.D. Fla. Apr. 21, 2021) (Marra, J.). "[T]he expert witness should do more than merely produce [medical] records." Sweat v. United States, 2015 WL 8270434, at *2 (M.D. Fla. Dec. 8, 2015).
>
> Wal-Mart is right that Torres's 26(a)(2)(C) summary is deficient. That summary does set out the "subject matter" of Dr. Cameron's expected testimony. Fed. R. Civ. P. 26(a)(2) (C)(i). For example, it discloses that Dr. Cameron will testify about the following:
>
>> [Dr. Cameron's] care and treatment of Plaintiff, as well as his opinion as the Plaintiff's treating physician related to the necessity of past and future medical care and treatment, the relation/cause of past and future medical care and treatment to the incident in the instant claim, the necessity and cost of past and future medical care and treatment, any permanency or any impairment related to the incident in the instant claim, the need and estimated cost of future medical care and treatment and prescription medications, therapy and other related medical needs as related to the injuries sustained by the Plaintiff in the instant claim.
>
> See Torres's Written Summary. At the same time, Torres never outlines "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C) (ii). Torres's summary only says that "Dr. Cameron's opinions as to the issues outlined above were formed based upon his experience, training,

7

and care and treatment of Plaintiff," and that "[c]opies of Dr. Cameron's medical records/reports have been previously provided to the Defendant." Torres's Written Summary. In addition, Torres never describes the specific opinions Dr. Cameron will be offering. And his vague allusions to "experience, training, and care" don't really explain the facts Dr. Cameron relied on. In this respect, Torres's voluminous records dump doesn't really comply with his obligation to give Wal-Mart a "summary" of those facts.

…

But these relatively minor deficiencies don't entitle Wal-Mart to the judgment it's so hard after. In general, "[i]f a party fails to properly disclose an expert witness under Rule 26(a), the party may not use the witness 'unless the failure was substantially justified or is harmless.' " *Izquierdo v. Certain Underwriters at Lloyd's London Subscribing to Pol'y No. BB014330K-3830*, 2021 WL 3197008, at *4 (11th Cir. July 29, 2021) In deciding whether exclusion is appropriate, the Eleventh Circuit has instructed courts to consider "the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party if the witness had been allowed to testify." *Id*. (quoting *Romero v. Drummond Co., Inc*., 552 F.3d 1303, 1321 (11th Cir. 2008)).

….

These factors compel us to find that any deficiency in Torres's expert summary was harmless. First, there's no evidence that Torres's failure to provide a sufficiently detailed summary stemmed from some purposeful strategy to deceive. Quite the opposite: so far as we can tell, the deficient disclosure was simply a mistake. See Taylor v. Mentor Worldwide LLC, 940 F.3d 582, 607–08 (11th Cir. 2019) (Tjoflat, J., dissenting) (noting that, to avoid exclusion, "the nondisclosure must *1300 be a mistake"). Second, there's no dispute that Dr. Cameron's testimony is crucial to this litigation. Indeed, Wal-Mart's whole premise is that the Court should enter judgment against Torres on the merits— thus ending this litigation and precluding Torres's right to redress—solely because of the report's deficiencies. Third, there's no evidence of any harm to Wal-Mart. To the contrary, Wal-Mart was aware of Dr. Cameron's involvement as early as December 3, 2019—when Torres included him in his initial disclosures. See Initial Disclosures [ECF No. 37-3]. Months later, on March 13, 2020, Torres identified Dr. Cameron again in response to Wal-Mart's interrogatories and, in doing so, provided all of Dr. Cameron's medical bills and records. See Response to Interrogatories [ECF No. 37-4] at 7–9. From the very beginning of this case, then, Wal-Mart had all it would ever really need to understand the scope and character of Dr. Cameron's testimony. It's no secret to anyone, after all, that Dr. Cameron will testify that Torres hurt his back when he slipped and fell at Wal-Mart. Wal-Mart, in sum, cannot win the case by feigning surprise today.

*Torres v. Wal-Mart Stores East, L.P.*, 555 F.Supp.3d 1276, 1299-1300 (S.D. Fla. 2021).

13.     **ANY ALLEGED DEFICIENCIES HAVE BEEN CURED BY THE CURRENT VERSION OF THE HYBRID EXPERT DISCLOSURES**. To the extent there were any deficiencies with Plaintiff's original "Hybrid Expert" disclosures, such deficiencies have been eliminated. In fact, the Defendant agrees that any alleged deficiencies have been cured by the current version of the Hybrid Expert Disclosures. See Footnote 1 above.

14.     **THE PLAINTIFF TIMELY SERVED HYBRID EXPERT DISCLOSURES** The Defendant argues that the Hybrid Expert Disclosures are untimely, they are not. Here, the Plaintiff timely served his Hybrid Expert Disclosures on March 4, 2025. DE 35-2. Dr. Jose Pizarro and Dr. Jason Siegel were disclosed in Hybrid Expert Disclosures on March 4, 2025. DE 35-2. The Plaintiff amended his Hybrid Disclosures to cure any alleged deficiencies. Serving amended expert disclosures after the expert disclosure deadline to correct any alleged deficiencies does not equate to an untimely disclosure. Further, the Defendant has had reports from Dr. Jose Pizarro, the neuroradiologist who generated the report regarding the DTI MRI and the NeuroQuant analysis, and from Dr. Jason Siegel the neurologist, who generated reports for the following testing performed on the Plaintiff: the WAVi electroencephalogram (EEG), the balance & fall risk (COP), the videonystagmogram/video oculography, the olfactory (UPSIT) testing and the heart rate variability testing since **January 31, 2025** (31 days before the expert disclosure deadline of March 4, 2025 DE 14).

15.     The Court in *Torres v. Wal-Mart Stores East, L.P.*, held that striking a hybrid because the summary of said hybrid was inadvertently served 14 days after the due date was a severe and improper remedy when, as here, the nondisclosure is "harmless." See *Torres v. Wal-Mart Stores East, L.P.*, 555 F.Supp.3d 1276, 1301 (S.D. Fla. 2021) Unlike the *Torres v. Wal-Mart*

*Stores East, L.P.*, the Plaintiff timely served his Hybrid Expert Disclosures on March 4, 2025. DE 35-2. Again, the fact that the Plaintiff served amended Hybrid Disclosures to cure any alleged deficiencies thereafter is not a basis to assert that the Hybrid Disclosures are untimely.

16.     Even if the Hybrid Expert Disclosures served on March 27, 2025 (DE 35-9) are considered untimely (which they should not be based on the arguments above), such "untimely" disclosure is harmless.  *Long v. E. Coast Waffles, Inc*., 762 F. App'x 869, 871 (11th Cir. 2019) ("While untimely disclosures are certainly disfavored, we cannot say, on these facts, that the district court manifestly erred in allowing [the expert] to testify. Although Rule 37 certainly permits a district court to exclude a witness based on a party's noncompliance with Rule 26, district courts are entitled to broad discretion in managing pretrial discovery matters."); *Almonte v. United States*, 2021 WL 3418402, at *4 (S.D. Fla. Apr. 21, 2021) (ordering "that [the treating physician] be produced by Plaintiff for a deposition prior to [the physician] testifying at trial" and finding, on that basis, that "the late disclosure of [the treating physician's] report was harmless"); *In re Denture Cream Prod. Liab. Litig*., 2012 WL 5199597, at *6 (S.D. Fla. Oct. 22, 2012) ("Because Defendants will neither be surprised nor be prejudiced, Plaintiffs' late disclosure of Rule 26(a)(2)(B) expert reports should not be remedied by the most extreme of sanctions.")

17.     **<u>NO PREJUDICE TO THE DEFENDANT</u>**. There is no prejudice here given that the Defendant has had reports from Dr. Jose Pizarro and Dr. Jason Siegel since **January 31, 2025** (31 days before the expert disclosure deadline of March 4, 2025 DE 14).  The lack of prejudice is further demonstrated by the fact that the Defendant retained neuroradiologist Dr. Harold Keyserling to offer opinions in opposition to Dr. Jose Pizarro. According to Dr. Keyserling's report, Dr. Keyserling reviewed the "Brain MRI with DTI and NeuroQuant analysis and accompanying report 11/18/2024 from Stand-Up MRI Miami" and "Records from Ethos Health Specialists 11/20/2024—11/22/2024". Accordingly,  Defendant's assertions about Dr. Pizarro and

Dr. Siegel being improperly and untimely disclosed and that the Defendant is unfairly prejudiced are completely baseless. It would be the Plaintiff who would be unfairly prejudiced if Dr. Pizarro and Dr. Siegel are not permitted to testify as Hybrid Experts. As such, Defendant's Motion must be denied.

18.     **RULE 26 INITIAL DISCLOSURES.** The Defendant also seeks to strike and/or preclude the following as it relates to Plaintiff's Rule 26 Initial Disclosures (DE 35):

   a.   Plaintiff's "Updated Rule 26 Disclosure A", served March 19, 2025 (DE 35-4).

   b.   Plaintiff's "Updated Rule 26 Disclosure B", served March 26, 2025 (DE 35-8).

   c.   Plaintiff's "Updated Disclosure C", served April 1, 2025 (DE 35-10).

19.     The Plaintiff disputes that any of the witnesses in Plaintiff's Updated Rule 26 Disclosure are untimely and improperly disclosed. The Plaintiff has timely and properly disclosed all witnesses in this case. The Plaintiff incorporates herein pages 4 through 38 of Plaintiff's Initial Disclosures served on March 27, 2025 (DE 35-10) which details when and how many times each medical provider/facility was disclosed to the Defendant. Further, the Defendant fails to identify which witnesses the Defendant claims are untimely and improperly disclosed.

20.     **LEGAL STANDARD FOR RULE 26 INITIAL DISCLOSURES.** Federal Rule of Civil Procedure 26 (a)(1)(A)(i) states that a Party must provide the other Party:

> the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

21.     Despite the Defendant's assertion that the Cruise Line cannot decipher which witness is expected to be called at trial (DE 35, pg. 8), the purpose of Rule 26 initial disclosures are not to identify who will be called at trial. Initial Disclosures are meant to provide the other party with information about individuals "likely to have discoverable information." The Plaintiff

has done that. The Defendant essentially complains about the thoroughness of Plaintiff's Rule 26 initial disclosures. Being thorough is not a basis to strike and/or preclude the Plaintiff's Rule 26 initial disclosures.

22. **THE DEFENDANT HAS KNOWN ABOUT ALL OF THE MEDICAL PROVIDERS AND HAS RECORDS FROM THESE MEDICAL PROVIDERS**. Notwithstanding the fact that the Defendant fails to identify which witnesses the Defendant claims are untimely and improperly disclosed, the Defendant ultimately seeks to strike and preclude witnesses the Defendant has not only known about and has had records from those providers for months before the discovery deadline. Plaintiff's most recent Initial Disclosures (DE 35-10) identifies all of the times and dates each medical provider was disclosed to the Defendant and when medical records for each provider were provided to the Defendant. For example, please see the highlighted portion:



See pages 4 through 38 of Plaintiff's Initial Disclosures served on March 27, 2025 (DE 35-10).

12

23.     In addition to the Plaintiff producing medical records from the Plaintiff's Medical providers to the Defendant, the Plaintiff provided executed authorizations for the Defendant to obtain the records directly from the providers. Plaintiff also served requests to get copies of the medical records the Defendant obtained from the providers.



In response to Plaintiff's Request for Production, the Defendant served the medical records that were obtained from the medical providers disclosed by the Plaintiff.



24.    To the extent that the Defendant argues that 46 witnesses were added out of the

blue, that is inaccurate. DE 35, pg. 7-8. Plaintiff incorporates pages 1 through 38 of Plaintiff's

Initial Disclosures served on March 27, 2025 (DE 35-10) herein. For example, the Plaintiff

disclosed Cumberland Heights Treatment Center in Plaintiff's Answers to Carnival's

Interrogatories served on October 7, 2024. The Plaintiff provided an authorization to the Defendant

for the Defendant to obtain records from this provider on October 28, 2024 and November 20,

2024. The Defendant produced documents obtained from this facility in response to the

authorization the Plaintiff provided the Defendant to the Plaintiff on February 14, 2025. See

Defendant's Notice of Compliance above.  Thereafter, the Plaintiff went back and identified each

14

provider from Cumberland Heights Treatment Center. While the Plaintiff added 21 witnesses to Plaintiff's Initial Disclosures served on March 19, 2025, these are witnesses the Defendant already knew about and had records from. The Defendant even provided records from Cumberland Heights Treatment Center to the Plaintiff on February 14, 2025.

25.     **<u>PREJUDICE TO THE PLAINTIFF</u>**. The relief sought by the Defendant is severe and unjustified.  The Defendant essentially seeks to strike and/or preclude every single witness in this case. That would be extremely prejudicial to the Plaintiff. The Defendant has not only known about and has had records from those providers for months before the discovery deadline. As such, Defendant's motion must be denied in its entirety.

WHEREFORE, the Plaintiff respectfully requests that this Court deny Defendant's Motion in its entirety to strike and/or preclude (DE 35) the following:

   a. Fifty-five (55) disclosed "hybrid expert witnesses" in "Hybrid Disclosure A", served March 4, 2025 (DE 35-2)

   b. Plaintiff's "Hybrid Disclosure B", served March 19, 2025 (DE 35-3)

   c. Plaintiff's "Hybrid Disclosure C", served March 27, 2025 (DE 35-9)

   d. Plaintiff's "Updated Rule 26 Disclosure A", served March 19, 2025 (DE 35-4)

   e. Plaintiff's "Updated Rule 26 Disclosure B", served March 26, 2025 (DE 35-8)

   f. Plaintiff's "Updated Disclosure C", served April 1, 2025 (DE 35-10)

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 13TH day of May, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

By:  *s/ Lisa C. Goodman*
**LISA C. GOODMAN, ESQ**. (FBN118698)
lgoodman@hickeylawfirm.com

16

CLAY CROCKETT v. CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE

CASE NO. 1:24-cv-21185-RAR

**SERVICE LIST**

| | |
|---|---|
| **John H. Hickey, Esq. (FBN 305081)**<br>hickey@hickeylawfirm.com<br>federalcourtfilings@hickeylawfirm.com<br>**Lisa C. Goodman, Esq. (FBN 118698)**<br>lgoodman@hickeylawfirm.com<br>kporras@hickeylawfirm.com<br>**Hickey Law Firm, P.A.**<br>12150 S.W. 128th Court, Suite 225<br>Miami, FL 33186<br>Tel. (305) 371-8000<br>Fax: (305) 371-3542<br>*Counsel for Plaintiff* | **Michael J. Drahos, Esq. (FBN: 1019357)**<br>michael.drahos@gray-robinson.com,<br>lilia.parker@gray-robinson.com<br>**Ashley Nicole Genoese, Esq. (FBN: 0617059)**<br>ashley.genoese@gray-robinson.com<br>**Gray Robinson, P.A.**<br>515 North Flagler Drive, Suite 650<br>West Palm Beach, FL 33401<br>Tel.: (561) 268-5727<br>Fax: (561) 268-5745<br>*Counsel for Defendant* |

17